IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM JOHNSON, TYRONE FISHER, BRIAN GUNTER, LESTER MAYO, JEFFREY HOPE, LATOSHIA MACK, and CHRISTINA THOMAS, On Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM DEDC, LLC, AMAZON CORPORATE LLC., AMAZON FULFILLMENT SERVICES, INC., SMX, LLC, and STAFF MANAGEMENT, INC.,<br><br>Defendants. | Civil Case No.:  3:14-cv-01797-JFA<br><br>COLLECTIVE ACTION COMPLAINT<br>(Jury Trial Requested) |

Plaintiffs, William Johnson, Tyrone Fisher, Brian Gunter, Lester Mayo, Jeffrey Hope Latoshia Mack, and Christina Thomas, individually and on behalf of all others similarly situated, by way of their Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

**NATURE OF CLAIMS**

1.      Plaintiffs bring this action seeking unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. Defendants Amazon.com dedc, LLC, Amazon Corporate, LLC and Amazon Fulfillment Services, Inc. (collectively referred to herein as the "Amazon Defendants") are subsidiaries of Amazon.com, LLC, which owns and operates Amazon.com, the world's largest online retail seller of goods. Currently, Amazon.com is a Fortune 100 company with a customer base of over thirty million people.  The Amazon Defendants own and operate warehouses, known as "Fulfillment Centers," throughout the United

States where they store goods to be shipped to customers both of Amazon.com and other retailers who use the Amazon Defendants' "fulfillment services." Defendants SMX, LLC and Staff Management, Inc. are labor and employee staffing companies who provide employees to work in the Amazon Defendants' Fulfillment Centers. Plaintiffs are former employees of the Defendants who worked at the Fulfillment Centers in South Carolina.

2. Plaintiffs bring this lawsuit seeking recovery as a collective action on behalf of themselves and all other similarly situated employees who suffered damages as a result of Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331.

4. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred within the judicial district. Presently and at all times, Defendants have conducted substantial, continuous, and systematic commercial activities in this district and the unlawful labor practices giving rise to Plaintiffs' claims were committed in the Columbia Division of this Court.

## PARTIES

5. Plaintiff William Johnson is over the age of nineteen (19) and is a resident of Richland County, South Carolina. Mr. Johnson worked as a warehouse associate at the facility located in West Columbia from approximately October 2011 until December 2012.

6. Plaintiff Tyrone Fisher is over the age of nineteen (19) and is a resident of Richland County, South Carolina. Mr. Fisher worked as a warehouse associate at the facility located in West Columbia from approximately October 2013 until February 2014.

7.      Plaintiff Brian Gunter is over the age of nineteen (19) and is a resident of Richland County, South Carolina.  Mr. Gunter worked as a warehouse associate at the facility located in West Columbia from approximately September 2013 until December 2013.

8.      Plaintiff Lester Mayo is over the age of nineteen (19) and is a resident of Richland County, South Carolina.  Mr. Mayo worked as a warehouse associate at the facility located in West Columbia from approximately November 2011 until January 2012, and again from June 2013 until August 2013.

9.      Plaintiff Jeffrey Hope is over the age of nineteen (19) and is a resident of Richland County, South Carolina.  Mr. Hope worked as a warehouse associate at the facility located in West Columbia from approximately November 2013 and December 2013.

10.     Plaintiff Latoshia Mack is over the age of nineteen (19) and is a resident of Richland County, South Carolina.  Ms. Mack worked as a warehouse associate at the facility located in West Columbia during November 2013.

11.     Plaintiff Christina Thomas is over the age of nineteen (19) and is a resident of Richland County, South Carolina.  Ms. Thomas worked as a warehouse associate at the facility located in West Columbia from approximately November 2013 until January 2014.

12.     Defendant, Amazon.com dedc, LLC is a Delaware corporation with its principal office located at 410 Terry Avenue North, Seattle, Washington. Defendant Amazon.com dedc, LLC resides in this judicial district and regularly conducts business in this judicial district.

13.     Defendant, Amazon Corporate, LLC is a Delaware corporation with its principal office located at 410 Terry Avenue North, Seattle, Washington. Defendant Amazon Corporate, LLC resides in this judicial district and regularly conducts business in this judicial district.

14. Defendant, Amazon Fulfillment Services, Inc. is a Delaware corporation with a principal office located at 410 Terry Avenue North, Seattle, Washington. Defendant, Amazon Fulfillment Services, Inc. resides in this judicial district. Defendant, Amazon Fulfillment Services, Inc. regularly conducts business in this district.

15. Defendant SMX, LLC ("SMX") is an Illinois corporation with a principal office located at 860 West Evergreen Avenue, Chicago, Illinois. Defendant SMX resides in this judicial district and regularly conducts business in this judicial district.

16. Defendant, Staff Management, Inc. is an Illinois corporation with a principal office located at 860 West Evergreen Avenue, Chicago, Illinois. Defendant Staff Management, Inc. resides in this judicial district and regularly conducts business in this judicial district.

## FACTS AND ALLEGATIONS

17. Defendants Amazon.com dedc, LLC, Amazon Corporate, LLC and Amazon Fulfillment Services, Inc. (the "Amazon Defendants") are subsidiaries of Amazon.com, LLC, which owns and operates Amazon.com, the world's largest online retail seller of goods. Currently, Amazon.com is a Fortune 100 company with a customer base of over thirty million people.

18. The Amazon Defendants own and operate "Fulfillment Centers," which are massive warehouse facilities that are used to store inventory, take orders, and ship orders to customers of Amazon.com and other retailers who utilize the Amazon Defendants "fulfillment services." The Amazon Defendants own and operate Fulfillment Centers throughout the United States, including West Columbia, South Carolina and Spartanburg, South Carolina.

19. Defendants Staff Management and SMX provide labor and employment staffing services for Defendant Amazon.com for the Fulfillment Centers. Defendants Staff Management

and SMX maintain offices at 1801 Charleston Highway Cayce, SC and 6655 Pottery Road Spartanburg SC for the purposes of recruiting and placing employees at the Amazon Defendants' Fulfillment Centers located in South Carolina. Defendants Staff Management and SMX have placed thousands of employees at the Amazon Defendants' Fulfillment Centers in South Carolina through their South Carolina offices.

20. Defendants primarily employ four types of employees at their Fulfillment Centers, including the South Carolina Fulfillment Centers: Pickers, Packers, Coaches, and Shipping (collectively referred to herein as "Warehouse Workers").

21. Defendants employed Plaintiffs as Warehouse Workers.

22. The primary duties of each type of Warehouse Worker involve manual labor related to the process of unloading and storing goods shipped to the Fulfillment Center and retrieving, packaging and shipping goods ordered by customers of Amazon.com and other retailers who utilize the Amazon Defendants "fulfillment services."

23. The primary duties of a Picker include walking throughout the warehouse facility with collection carts, retrieving those goods from shelves within the Fulfillment Center, scanning the items they have retrieved and directing the goods for distribution to customers. A Picker can log as many as twenty (20) miles during a twelve (12) hour shift retrieving items in the warehouse.

24. The primary duties of a Packer include scanning the goods they package at an assigned computer station, putting goods into boxes to be shipped to customers, inserting packaging material into the boxes, and attaching the correct labeling to the box to be shipped to customers.

25. The primary duties of a Coach include monitoring the productivity of the Pickers and Packers and informing them when they are falling short of the Defendants' productivity goals.

26. The primary duties of a Warehouse Worker in "Shipping" include unloading boxes of goods in the warehouse and using a scanner to record the location of the goods stowed in the Fulfillment Center.

27. Defendants have employed Plaintiffs along with hundreds (and, possibly thousands) of similarly situated Warehouse Workers at its South Carolina Fulfillment Centers during the three year time period immediately preceding this lawsuit.

28. Defendants compensated the Plaintiffs and all similarly situated Warehouse Workers at an hourly rate.

29. Plaintiffs and other Warehouse Workers regularly work more than forty (40) hours in a workweek. The Plaintiffs and other Warehouse Workers were required to work between ten (10) and twelve (12) hours per shift. During the "peak season" the Warehouse Workers' shifts extended beyond twelve (12) hours.

30. Plaintiffs and all similarly situated Warehouses Workers are non-exempt employees.

31. Plaintiffs and similarly situated Warehouses Workers enter a Fulfillment Center by scanning their employee ID badges in a revolving security gate. After Plaintiffs and other similarity situated Warehouse Workers enter the facility, they must pass through a second security screening system and walk to the time clocks, where they clock-in by scanning their employee ID badges into a time clock.

32. Defendants provided one (1) uncompensated thirty (30) minute break period to Plaintiffs and other Warehouse Workers during each ten (10) to twelve (12) hour shift. Defendants required Plaintiffs and all other Warehouse Workers to take their break simultaneously, and designated a different thirty (30) minute time period each workday during which all of the workers would take a break. Under the Defendants' break policy, Plaintiffs and other Warehouse Workers were required to be at their work locations at the beginning and end of the designated thirty (30) minute time period during which Defendants permitted them to take a break from work.

33. When the Defendants designated break period commenced, Defendants required Plaintiffs and other Warehouse Workers to complete the task they were performing before beginning their individual break. Defendants required Plaintiffs to secure the product they were "picking", "packing" or "stowing" so that it does not get lost or misplaced while they are on the meal break, and to turn in their scanners and/or log out of their computer station before going on the meal break. As a result, Plaintiffs and other Warehouse Workers regularly performed work during Defendants' designated break period and did not actually begin their break at the start of the designated thirty (30) minute break period.

34. After the start of Defendants' designated break period, Plaintiffs and other Warehouse Workers must walk from their work locations to the time clock and wait in line for several minutes to clock out by scanning their employee ID numbers.

35. After clocking out, Defendants required Plaintiffs and other Warehouse Workers to undergo an intensive and time-consuming security screening before they exited the area of the Fulfillment Center where they performed their primary duties. Defendants required Plaintiffs and other Warehouse Workers to remove all of their personal belongings, such as wallets, keys, and

belts, and pass through a metal detector before being allowed to leave the secured area of the Fulfillment Center. If the metal detector's alarm sounded during the security screening process, Defendants' security guards individually searched the Plaintiffs and other Warehouse Workers using a metal detecting wand, which required even more time.

36. Due to the large number of Warehouse Workers entering and leaving the secured area of the Fulfillment Center at the same time, the Defendants' security screening processes typically took approximately (5) minutes or longer for Plaintiffs and other Warehouse Workers to complete.

37. After completing the security screening, Defendants required Plaintiffs and other Warehouse Workers to walk either to their vehicle, the break room, or vending machines located in the Fulfillment Center so they could eat. Because of the massive size of the Defendants' Fulfillment Centers, the walk would take six (6) to seven (7) minutes in each direction.

38. Prior to the conclusion of Defendants' designated break period, Defendants required Plaintiffs and other Warehouse Workers to wait in line at the time clock for several minutes in order to clock in by scanning their employee ID badges before returning to their work locations.

39. Managers and Supervisors sometimes approach Warehouse Workers during Defendants' designated break period to give them written warnings and assign disciplinary points to them for filing to maintain the Defendants' productivity goals during the shift.

40. Because the Defendants required Plaintiffs and other Warehouse Workers to clock-in and out, complete work assignments, turn in equipment and undergo a security screening process during the Defendants' designated break period, the Plaintiffs and other Warehouse Workers did not receive thirty (30) minutes within which to eat a meal.

41. Because Defendants' policies and practices required Plaintiffs and other Warehouse Workers to leave their personal belongings, such as their cell phones, in their vehicles, Plaintiffs and other Warehouse Workers are unable to engage in any personal activities during the security screening process.

42. The Defendants' mandatory security screening process is integral and indispensable to the principal job activities of Plaintiffs and other Warehouse Workers. Defendants do not allow Plaintiffs and other Warehouse Workers to leave their Fulfillment Centers until they have successfully completed the entire screening process. Defendants' mandatory security screening process is solely for the benefit of Defendants and is designed to prevent employees from stealing merchandise contained within the Fulfillment Center.

43. Defendants did not compensate Plaintiffs and other Warehouse Workers for the time spent during the designated break periods.

44. As a result of the time spent clocking in and out, going through the Defendants' screening process, and walking to and from the break room or their vehicles, Plaintiffs and other Warehouse Workers typically received less than eighteen (18) minutes to eat during their break.

45. As a result of Defendants policies and practices, Plaintiffs and other Warehouse Workers were unable to pursue their mealtime adequately and comfortably, and they were engaged in the performance of duties predominantly for Defendants' benefit.

**FOR A FIRST CAUSE OF ACTION**
(Fair Labor Standards Act–Failure to Pay Overtime Wages)
(Individual and Collective Action)

46. Plaintiffs, on behalf of themselves and all similarly situated employees, reallege and incorporate by reference all preceding paragraphs as if they were set forth herein verbatim.

47. At all times relevant herein, each of the Defendants was an "enterprise" within the meaning of § 3(r) and § 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) & (s).

48. At all times relevant herein, each of the Defendants was an "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(d), and collectively the Defendants were "joint employers" of the Plaintiffs and other Warehouse Workers as that term is defined under 29 C.F.R. §791.2.

49. The annual gross sales volume of the Defendants' business was in excess of $500,000.00 per annum at all times material hereto. Alternatively, Plaintiffs and similarly situated employees worked in interstate commerce so as to fall within the protections of the FLSA.

50. Plaintiffs and other Warehouse Workers were employees of Defendants for purposes of the Fair Labor Standards Act during all times relevant to this Complaint. Defendants failed to pay Plaintiffs and other Warehouse Workers at the rate of one-and-a-half times their normal rate of pay for all hours worked in excess of forty (40) hours in a workweek as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

51. The time spent by Plaintiffs completing their task and securing Defendants' goods, clocking in and out, and going through Defendants' security screening processes during Defendants' designated break periods is compensable "work" as that term is defined by the FLSA.

52. The breaks taken by Plaintiffs and other Warehouse Workers were compensable time under the rest period provisions of the FLSA, including 29 C.F.R. §785.18.

53. Defendants mischaracterized the designated break periods they provided to Plaintiffs and other Warehouse Workers as non-compensable Bona Fide Meal Periods, which,

pursuant to 29 C.F.R, §715.19, requires that employees be completely relieved from duty for purposes of eating regular meals for a thirty-minute time period.

54. Defendants' failure to compensate Plaintiffs and other Warehouse Workers for overtime work and for "off the clock hours" as required by the FLSA willful.

55. Plaintiffs and other Warehouse Workers are entitled to an award of unpaid overtime compensation at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty (40) hours worked in a workweek, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

56. Plaintiffs and other Warehouse Workers are entitled to liquidated damages equal to the amount of unpaid compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

57. Plaintiffs are entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs William Johnson, Tyrone Fisher, Brian Gunter, Lester Mayo, Jeffrey Hope, Latoshia Mack, and Christina Thomas, on behalf of themselves and all other similarly situated individuals, demand:

   a. Certification of this action as a collective action on behalf of the Plaintiffs and all other similarly situated individuals, pursuant to 29 U.S.C. § 216 (b);

   b. Damages jointly and severally against Defendants for all unpaid overtime compensation;

   c. Liquidated damages jointly and severally against Defendants in an amount equal to the unpaid overtime compensation;

    d.  Attorneys' fees and costs incurred in bringing this action; and

    e.  All such further relief as the Court deems just and equitable.

## JURY DEMANDED

Plaintiffs William Johnson, Tyrone Fisher, Brian Gunter, Lester Mayo, Jeffrey Hope, Latoshia Mack, and Christina Thomas hereby demand a trial by jury.

Respectfully submitted,

/s/ Marybeth Mullaney
Marybeth Mullaney, Esq.
Fed. ID No. 11162
MULLANEY LAW
321 Wingo Way Suite 201
Mount Pleasant, South Carolina 29464
(843) 849 -1692 (O)
(800) 385-8160 (Facsimile)
marybeth@mullaneylaw.net

William C. Tucker
TUCKER LAW, PLC
Federal ID No.6187
Email: bill.tucker@tuckerlawplc.com
690 Berkmar Circle
Charlottesville, Virginia 22902
Telephone: 434.978.0100
Facsimile: 434.979.0037

**Attorneys for Plaintiffs**

May 1, 2014
Mount Pleasant, South Carolina.